# In the United States Court of Federal Claims

OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
| | | |
|---|---|---|
| STEVEN MCGEHEE, | \* | |
| | \* | No. 14-1020V |
| Petitioner, | \* | Special Master Christian J. Moran |
| | \* | |
| v. | \* | Filed: November 6, 2015 |
| | \* | |
| SECRETARY OF HEALTH | \* | Onset of neurologic problems |
| AND HUMAN SERVICES, | \* | |
| | \* | |
| Respondent. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Nancy R. Meyers, Ward Black Law, Greensboro, NC, for petitioner;
Glenn A. MacLeod, United States Dep't of Justice, Washington, DC, for respondent.

## RULING FINDING FACTS[1]

The petitioner, Steven McGehee, alleges that an influenza vaccine injured his nerves. Mr. McGehee more specifically alleges he suffered transverse myelitis or polyradiculitis. Pet. ¶¶ 8-9, 11. He seeks compensation pursuant to the National Childhood Vaccine Injury Compensation Program, 42 U.S.C. § 300aa–10 through 34 (2012).

The Secretary maintains that Mr. McGehee is not entitled to compensation for several reasons. The Secretary asserts that Mr. McGehee has not established that he suffers from either transverse myelitis or polyradiculitis. Resp't's Rep., filed April 6, 2015, at 7-9. Additionally and importantly for the present ruling, the Secretary and Mr. McGehee disagree about when Mr. McGehee first started to

---

[1] The E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002), requires that the Court post this ruling on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

suffer symptoms associated with a neurologic problem. To resolve these factual disputes, a hearing was held to receive testimony from percipient witnesses. See Campbell v. Sec'y of Health & Human Servs., 69 Fed. Cl. 775, 779-80 (2006). Mr. McGehee and a former girlfriend testified.[2] Following the submission of one additional document, the matter is ready for adjudication.

## Basic Chronology of Undisputed Facts

Mr. McGehee was born in February 1965. At the age of 32, he was diagnosed with an enlarged prostate. Exhibit 3 at 2.

In 2011, Mr. McGehee was working as an electrician at Moses Cone Hospital. Exhibit 4 at 4, Tr. 35. At Moses Cone, Mr. McGehee received a dose of the flu vaccine on October 24, 2011. Exhibit 1 at 3.

A few months before Mr. McGehee received the flu vaccine, he began dating a woman who also worked at Moses Cone. Tr. 13, 25, 105. Mr. McGehee and his former girlfriend recall that he had burning feelings in his saddle region, particularly after intimate relations. Tr. 13-14, 108, 114. They both recalled that Mr. McGehee's problem was present by Thanksgiving 2011. Id.

The relationship between Mr. McGehee and his girlfriend ended shortly after his birthday in February 2012. The burning in his saddle region and the way that he responded to that pain contributed to the end of the relationship. Tr. 13-15, 20, 36-38, 43, 122.

Mr. McGehee saw a doctor for the first time after receiving the flu vaccine on December 20, 2011. Exhibit 2 at 10. His next doctor's visit, which was on February 21, 2012, was similar. Id. at 9. At both appointments, Mr. McGehee told Dr. Fagan that he was suffering from head congestion. Id. at 9-10. Mr. McGehee did not tell Dr. Fagan about any pain in his saddle region at either appointment.

On March 19, 2012, Mr. McGehee returned to Dr. Fagan. On this occasion, Dr. Fagan recorded that Mr. McGehee "complains of a burning pain involving his scrotal and pelvic area as well as his left flank over the past one to 2 weeks. He has burning on urination at times[.]" Exhibit 2 at 8.

---

[2] The name of Mr. McGehee's former girlfriend is not relevant.

Mr. McGehee provided a relatively similar history to a urologist on April 30, 2012.  Dr. Dahlstedt recorded "[o]ver past 2 months or so, he has had persistent burning in his perineum and scrotal area[.]"  Exhibit 3 at 1.

Dr. Fagan's March 19, 2012 record and Dr. Dahlstedt's April 30, 2012 record point to an onset of burning at around the end of February or beginning of March 2012.  In contrast, Mr. McGehee's memory places the onset at least three months earlier, November 2011.  This is the crux of the dispute: when did Mr. McGehee first experience problems burning in his saddle region.

## Standards for Adjudication

The standards for resolving findings of fact are sufficiently established that they need not be repeated here.  For a detailed account, see <u>Bayless v. Sec'y of Health & Human Servs.</u>, No. 08-679V, 2015 WL 638197, at *2 (Fed. Cl. Spec. Mstr. Jan. 15, 2015).

## Assessment of Witnesses

Both Mr. McGehee and his former girlfriend were credible witnesses.  They were willing to provide information about what is usually a private topic.  Mr. McGehee responded to questions as best as his memory would allow.  His former girlfriend appeared to answer questions spontaneously and without pretense.

## Analysis

I find that Mr. McGehee began to feel burning in his saddle region around November 15, 2011.  The witnesses' oral testimony was sufficiently compelling to overcome the presumption that attaches to medical records created contemporaneously with the events that they are describing.

The finding that the burning in Mr. McGehee's saddle region started around November 15, 2011 is based on the chronology of the dating relationship between Mr. McGehee and his former girlfriend.  They had had sex without any problems for a few weeks before sex became very painful for him.  Tr. 108.  Although neither was sure when intercourse was first painful, both stated that by Thanksgiving, sex was painful.  Tr. 14, 113.  Ejaculating increased Mr. McGehee's pain, but Mr. McGehee also had pain apart from intercourse.  Tr. 13-15.

After at least one dramatic episode, Mr. McGehee's girlfriend urged him to go to the emergency room.  Tr. 37.  Based upon her training as a nurse, she

3

believed that the burning sensation originated in his neurologic system. Tr. 15-16; see also Tr. 23 (experience as a nurse). Mr. McGehee refused to seek medical assistance because he was embarrassed because of the personal nature of his problems. Tr. 14, 36.

The burning in Mr. McGehee's saddle region was his primary, but not exclusive, problem. He also felt burning in his feet. Tr. 35-36. Whether the burning started in his feet and radiated up to his pelvis or whether the burning started in his pelvis and radiated down is not clear. See Tr. 20, 28, 36. Mr. McGehee also frequently experienced pain or burning when urinating. Tr. 21. Less frequently, he experienced a sensation of rectal fullness. Id. There was also some problem in his fingertips. Tr. 28. Overall, Mr. McGehee had good days and bad days. Tr. 29.

Although the onset of Mr. McGehee's problems was in November 2011, he did not tell Dr. Fagan about his problems when Mr. McGehee saw him for sinus congestion in December 2011 and February 2012. Exhibit 2 at 9-10, Tr. 49, 73-75. Again, Mr. McGehee's embarrassment made him reluctant to confide in Dr. Fagan. In his testimony, Mr. McGehee recognized that in hindsight, he should have sought medical attention months earlier when his girlfriend suggested that plan. Tr. 47.

Mr. McGehee finally disclosed the burning in his saddle region to Dr. Fagan in March 2012. Exhibit 2 at 8. The Secretary relies upon the portion of the record that states Mr. McGehee "complains of a burning pain involving his scrotal and pelvic area . . . over the past one to 2 weeks." Exhibit 2 at 8. This record is presumptively accurate. Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

However, in the hearing, Mr. McGehee provided a persuasive basis for finding that Dr. Fagan's record was not accurate. Mr. McGehee explained that he told a woman who worked in Dr. Fagan's office as a nurse that he was having a burning problem in his saddle region for four or five months. The woman, according to Mr. McGehee's recollection, told him that he should have sought medical attention after a week or two. Tr. 44-48, 83, 118.

It appears that the retort from the nurse may have influenced the history that Mr. McGehee gave to Dr. Fagan. By all accounts, Mr. McGehee was already seeking medical attention for a private matter reluctantly and then he perceived that the nurse criticized him. To avoid a similar rebuke from the doctor, Mr. McGehee told Dr. Fagan about his problems and supplied a chronology that

aligned with the nurse's expectation.[3]  Thus, it is more-likely-than-not that Dr. Fagan accurately recorded inaccurate information.

In any event, Dr. Fagan's March 19, 2012 record is one record that must be placed into context with other evidence.  This other evidence includes the testimony from Mr. McGehee and his former girlfriend, which, as described above, was compelling.  In addition, in March 2013, Mr. McGehee told Dr. Willis that he received a flu shot before the start of his symptoms, exhibit 4 at 4, and in April 2013, Mr. McGehee told Dr. Runheim that he was having pain for 18 months.  Exhibit 5 at 2, see also Tr. 54-55, 134-35.  While Mr. McGehee was not providing a history of contemporaneous events in this portion of Dr. Willis's and Dr. Runheim's record, see Shapiro v. Sec'y of Health & Human Servs., 101 Fed. Cl. 532, 539 (2011) (discussing meaning of contemporaneous), mot. for recons. denied after remand, 105 Fed. Cl. 353 (2012), aff'd, 503 F. Appx. 952 (Fed. Cir. 2013), Mr. McGehee's reports to these doctors provide some ancillary support for his testimony.

## Conclusion

The parties are ordered to provide these findings of fact to any expert whom they have retained to testify.  Expert opinion inconsistent with these findings of fact is not likely to be persuasive.  See Burns v. Sec'y of Health & Human Servs., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that the special master did not abuse his discretion in refraining from conducting a hearing when the petitioner's expert "based his opinion on facts not substantiated by the record"); Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."); Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375, 1376 n.6 (Fed. Cir. 1994) ("An expert opinion is no better than the soundness of the reasons supporting it."); see also Bradley v. Sec'y of Health & Human Servs., 991 F.2d 1570, 1574 (Fed. Cir. 1993) (the assumption of an expert about the accuracy of a fact witness's testimony does not "substantiate" the fact witness's testimony).

---

[3] Mr. McGehee testified that he told Dr. Fagan that his problems had been going on for months.  Tr. 83-84.  However, it seems rather unlikely that Dr. Fagan would hear "four or five months," but write "one or two weeks."

A status conference is set, sua sponte, for **December 9, 2015, at 2:00 P.M. Eastern Time**. The parties should be prepared to propose the next step in this case.

Any questions may be directed to my law clerk, Dan Hoffman, at (202) 357-6360.

**IT IS SO ORDERED.**

s/ Christian J. Moran<br>
Christian J. Moran<br>
Special Master